## McCANLESS et al. v. DEVENPORT.
### No. 10823.

Court of Civil Appeals of Texas. Dallas.
May 9, 1931.

Rehearing Denied June 27, 1931.

William Hodges, of Texarkana, and Will Hancock, of Waxahachie, for appellants.

J. Lee Gammon and Mark Smith, both of Waxahachie, for appellee.

LOONEY, J.

P. F. Devenport's first wife, Mrs. May Devenport, died during the year 1909, leaving three children born to the marriage, appellants and another, Billy Devenport, who died intestate, leaving as his only heirs his father and appellants. At the time of the death of Mrs. Devenport, she and her husband owned and occupied a community homestead, referred to herein as the Waters street property. P. F. Devenport and appellee, referred to herein as Mrs. P. F. Devenport, were married during the year 1910, and the Waters street property continued as the homestead of the family until the death of Mr. Devenport September 24, 1927, and during their marriage was improved with their community funds, to the extent of $1,500. At the time of his death, Mr. Devenport owned a seven-twelfths undivided interest in the homestead property, also an undivided one-half interest in two lots located on Franklin street in said city, referred to hereafter as the Franklin street property, so at the institution of this suit, appellants owned, as heirs of their mother, a five-twelfths undivided interest in the Waters street property and, as heirs of their father, a seven-twelfths undivided interest in same, and an undivided one-half interest in the Franklin street property, subject however to homestead and other rights of appellee.

Soon after the death of Mr. Devenport, appellants filed this suit (No. 13476) against appellee for partition of the Waters street property, and about the same time they and other owners of the Franklin street property filed another suit (No. 13477) against appellee for partition of the latter property. Not being capable of division, the Franklin street property was sold under order of court and the proceeds ($3,800) were paid into the registry of court, and thereafter, on proper pleading, the two suits were consolidated and the share of the proceeds belonging to the estate of P. F. Devenport ($1,745.98) was left in the registry of court subject to distribution. The parties agreed that the Waters street property (homestead) was incapable of division, that it should also be sold and the proceeds divided in accordance with their legal rights, and for this purpose an agreement was entered into, to the effect that the property was worth $3,000, and that the interest of the parties should be based upon that valuation.

Appellee claimed an allowance of $1,000 for one year's support; $500 in lieu of exempt personal property; $3,500 in lieu of homestead; and $2,531.87 for improvements made upon the Waters street property with funds belonging to the community estate of the second marriage.

The case was submitted and taken under advisement October ———, 1929, and on February 28, 1930, the last day of the term, judgment was rendered directing sale of the homestead property, establishing allowances and the rights of the parties as follows: Appellee was allowed $250 for one year's support; $2,000 as the cash value of an allowance in lieu of a homestead; $570.70 as the cash value of her one-third life interest in the estate of her deceased husband, and $750 the value of her one-half interest in the claim for improvements placed upon the homestead property; the court directed that $1,745.98, the entire proceeds of the Franklin street property, be used in making up the homestead allowance, that the necessary additional amount ($254.02) be paid from the proceeds of the Waters street (homestead) property, and that payment of these sums to appellee be unconditional, and without remainder to appellants. The clerk was also ordered to pay appellee, from the proceeds of the homestead property, $750, her interest in the claim for improvements; $570.70, the cash value of her one-third life interest in the estate of deceased; and $250 for one year's support. To appellants, the court adjudged, share and share alike, the proceeds of five-twelfths ($625) of the original value ($1,500) of the homestead property, also the fund remaining after satisfying allowances in favor of appellee, above mentioned; and further that appellants recover of appellee $150, the amount ascertained to be due for rents. Appellants excepted and gave notice of and perfected appeal.

The facts are undisputed, and as the judgment of the trial court is, in our opinion,

erroneous in several respects, we will proceed to render such judgment as we think should have been rendered. Article 1856, R. S. 1925.

The questions discussed have been properly raised and briefed.

■ 1. Appellants insist that the court erred in rendering judgment on the last day of the term, in violation of rule No. 66.

Appellants' bill of exception contains matter showing that the court did in fact violate rule No. 66, as contended, but they failed to show that any injury was suffered as a consequence. It was formerly held that the violation of this rule was reversible error, whether injury resulted or not (see Camoron v. Thurmond, 56 Tex. 26), but such is not the rule now. Rule 62a provides, among other things, that "no judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of opinion that the error complained of amounted to such a denial of the rights of the parties as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. * * *"

In Wells Fargo & Co. v. Benjamin, 165 S. W. 120, 127, Judge Hodges, speaking for the Texarkana court, said: "But we take it that the promulgation of rule 62a is the positive announcement by our Supreme Court of a change of judicial policy in respect to such matters; that the presumption in favor of injury, if not shifted, is abolished; that hereafter no case should be reversed because of errors in such rulings" unless it should be made to appear that the error complained of was prejudicial. In Golden v. Odiorne, 112 Tex. 547, 548, 249 S. W. 822, 823, Judge McClendon, for the Commission, said: "The evident purpose of rule 62a was to prevent the reversal of trial court judgments for technical and unsubstantial errors, and to cast the burden of showing prejudice upon the party complaining of the erroneous ruling, so far, at least, as it was within his power to do so. * * * Under the doctrine of harmless error, our courts have always declined to disturb a ruling or judgment of the trial court, athough palpably erroneous, where it appeared that no injury resulted to the complaining party. Rule 62a merely enlarged this doctrine, so as to cast upon the complaining party the burden of showing at least that the error probably resulted to his prejudice." This contention of appellants is overruled.

■ 2. Appellants complain of the action of the court in allowing appellee $250 for one year's support, because, they say, the undisputed evidence showed that she had separate property ample for her maintenance during the first year after the death of her husband. On this issue appellee testified: "At the time

of Mr. Devenport's death I collected on account of his sickness and death the sum of $989.43 from the Woodmen of the World. Since the death of my husband, I have had on hand all of the property exempt by law from execution which I have needed in my business; and have not had to borrow funds for my support for the term of one year after the death of Mr. Devenport—have not borrowed any money, but just used what I had. I own another house and lot from which I collected $8.00 per month as rent."

The controlling statutes are articles 3477 and 3478, and the pertinent provisions are these: "Such allowance [for one year's support] shall be fixed with regard to the facts existing during the first year after such death. * * * No such allowance shall be made for the widow when she has separate property adequate to her maintenance. * * *" As appellee testified that she had adequate means for her support during the first year after the death of Mr. Devenport, the allowance of $250 for this purpose was unauthorized and forbidden by statute.

■ 3. The court found the cash value of the homestead allowance to be $2,000, also that the cash value of appellee's life interest of one-third in the real estate of deceased was $570.70, and directed payment of these amounts to appellee, unconditionally, without remainder to appellants. To this action of the court appellants assigned error, (a) because there was no evidence upon which the court could have based a finding of cash value, and (b) because the use by appellee of these allowances should have been limited to her lifetime, and some form of security should have been exacted for the return to appellants of these funds at the expiration of the estates.

In a number of compensation cases the rule has been announced that the present or cash value of lump sum payments cannot be arbitrarily arrived at, but must be based upon evidence showing the proper rate of discount. No evidence of this nature is contained in the record. Maryland, etc., v. Marshall (Tex. Civ. App.) 14 S.W.(2d) 337, 342; Petroleum Co. v. Bristow (Tex. Civ. App.) 21 S.W.(2d) 9, 13; Texas Emp., etc., v. Stephens (Tex. Civ. App.) 22 S.W.(2d) 144; Maryland, etc., v. Ham (Tex. Civ. App.) 22 S.W.(2d) 142. But by far the most serious objection to the order of the court is in directing unconditional payment of these funds to appellee, because the inescapable effect of the order is to confiscate appellants' interests in remainder. At the death of P. F. Devenport the title to both parcels of real estate descended and passed in parcenary to appellants, subject however to the homestead right and life estate therein of appellee. The sale and conversion of the land into money, for purposes of partition, did not alter or change the respective le-

gal rights of the parties—money took the place of land and is held upon the same basis of title as was the land. Lucas v. Lucas, 104 Tex. 636, 143 S. W. 1153, 1156; Hays v. Moore (Tex. Civ. App.) 144 S. W. 1054. The unconditional payment to appellee of the funds, representing her homestead and life interest, as directed by order of court, would unquestionably divest appellants of their title to the remainder, and result in a confiscation of their property. Hays v. Moore, supra. We therefore sustain appellants' assignment complaining of the action of the court in this respect.

■■ 4. Appellants say that, as P. F. Devenport left surviving a constituent of the family, his interest in the Waters street (homestead) property descended to and vested in them, subject alone to appellee's one-third life estate. This contention is based on the idea that appellee waived her homestead rights in the property. We do not think so. She recognized that the homestead lot was incapable of division (as did appellants) and sought its sale, in order to accomplish partition, but insisted throughout upon an allowance in lieu of homestead. The homestead left her was not in condition, as to title, to be partitioned and used as a home, and as its proceeds alone were insufficient, the court was, in our opinion, justified in making appropriations from proceeds of both lots, to make up a sufficient homestead allowance. See Hoffman v. Hoffman, 79 Tex. 189, 195, 14 S. W. 915, 15 S. W. 471; Clift v. Kaufman, 60 Tex. 64; Crocker v. Crocker, 19 Tex. Civ. App. 296, 46 S. W. 870.

■ 5. We think an allowance of $2,000 for homestead purposes, in view of all the facts and circumstances, is fair and just to all parties, but dissent from the trial court's method of building up the fund. The court appropriated for this purpose $1,745.98, being the entire proceeds from the sale of the Franklin street property, and to complete the allowance added $254.02, taken from the proceeds of the homestead proper. This, in our opinion, was the reverse of what should have been done. These proceeds stood—as to title, rights, and interest—precisely on the same basis as did the lands before being sold; the seven-twelfths interest of deceased in the Waters street property was impressed with the homestead interest of appellee, its value, based on the agreed valuation of the entire property, is $1,750, which should, in our opinion, be appropriated to make up pro tanto the allowance, and the same should be completed by appropriating, from the proceeds of the Franklin street property, the additional sum of $250.

■ 6. The proceeds of the Franklin street property and the seven-twelfths interest of deceased in the Waters street property

aggregate $3,495.98; in which, under the statute, appellee has a one-third life interest, which amounts to the sum of $1,165.32, but it is obvious that her one-third interest in the $2,000 allowed in lieu of homestead will, for all practical purposes, be merged with the latter estate, and necessarily dormant and inactive as long as she is permitted, under the law, to use and enjoy the homestead allowance. Merger of estates, as that term is understood, is the absorption of one estate in another, and results when a greater estate and a less meet at the same time in one and the same person, without an intervening estate. 10 R. C. L. 166, § 26; Larmon v. Larmon, 173 Ky. 477, 191 S. W. 110, 112. But as appellee's homestead and life interests in the same property are of equal degree, neither being greater than the other, technically speaking, they do not merge, but rather the life estate is submerged, for the time the homestead right is exercised; however, to all intents and purposes, a merger is produced by the unity of possession. Boykin v. Ancrum, 28 S. C. 486, 6 S. E. 305, 309, 13 Am. St. Rep. 608.

■ That these two estates in the same property (the homestead and one-third life interest) may exist and be exhausted at the same time, was recognized by Courts of Civil Appeals in McCaskey v. Morris, 40 Tex. Civ. App. 390, 89 S. W. 1085, and in Haley v. Hail (Tex. Civ. App.) 135 S. W. 663, 664. The latter case was a suit between the widow and the heirs of a deceased husband and father, to establish and partition the respective interests of the parties in the separate property of the deceased. The estate consisted of about 440 acres in three tracts, upon which the homestead of 200 acres was located. The judgment directed that the widow's one-third life estate be set aside so as to be included within the 200 acres set apart for homestead. This judgment was affirmed and writ denied by the Supreme Court. In affirming the judgment, the Court of Civil Appeals said: "The practical effect of the decree was to require the one-third life estate of the appellee to be taken from the land upon which her homestead was located." Again, the life estate of appellee in the remainder of the fund must be subordinated to her debt for $750 against the estate; therefore, after deducting from $1,745.98, proceeds of the Franklin street property, these two items, to wit, $250 used to complete the homestead allowance, and $750, debt against the estate, $745.98 remains, one-third of which ($248.66) represents the active life interest of appellee in the estate.

■ 7. As above stated, the court found that appellee was entitled to $750, half of the community claim for improvements, and directed its payment from the proceeds of the homestead property. We think the court

erred in appropriating proceeds of the homestead for that purpose. At the death of P. F. Devenport, a constituent of his family (appellee) remained, therefore his interest in the homestead descended and vested in appellants, free from debt, except for purchase money, taxes, or improvements contracted in writing, in the manner prescribed by the Constitution, and as it is not contended that the claim for $750 belongs to either of these categories, it was neither a charge upon the land nor its proceeds. See Allen v. Ramey (Tex. Civ. App.) 226 S. W. 489; Cline v. Niblo, 117 Tex. 474, 8 S.W.(2d) 633, 66 A. L. R. 916; Johnson v. Hampton, 117 Tex. 580, 8 S.W. (2d) 640; Hoefling v. Hoefling, 106 Tex. 350, 167 S. W. 210. However, we are of opinion that appellee's right to be reimbursed otherwise, from the estate of her deceased husband, is fully sustained by the authorities. See Schmidt v. Huppmann, 73 Tex. 112, 116, 11 S. W. 175; Bullock v. Sprowls (Tex. Civ. App.) 54 S. W. 657, 661; Barber v. Barber (Tex. Civ. App.) 223 S. W. 866; Clift v. Clift, 72 Tex. 144, 148, 10 S. W. 338; Furrh v. Winston, 66 Tex. 521, 1 S. W. 527; Summerville v. King, 98 Tex. 338, 83 S. W. 680; German v. Hunter (Tex. Civ. App.) 32 S. W. 344, 345. Appellee's claim, being a debt against the estate, is collectible through an administration, but no reason exists for such circumlocution, as the same may be adjudicated and settled in this suit. The Supreme Court, in Moore v. Moore, 89 Tex. 33, 34, 33 S. W. 217, 219, dealing with a similar situation, said: "When an estate is sought to be divided through a suit in the district court for partition, that court has jurisdiction to settle and determine all of the rights and equities of the parties growing out of their joint or common ownership of the property. * * * It is the policy of our law to settle in one suit all litigation with reference to the subject-matter, and to adjust the rights of all the parties thereto, in so far as it can be done in accordance with our liberal rules of proceeding. It would be simply multiplying suits to send the defendants into the same court, in another action against the same parties, in order to establish their rights with reference to the property then being litigated."

In harmony with these views, we reverse the judgment of the trial court in part, reform and affirm the same in part, and remand with instructions, as follows: The allowance to appellee of $250 for one year's support is set aside and judgment rendered for appellants on that issue; appellee is allowed $2,000 in lieu of the homestead, comprised of $1,750 proceeds of the interest of deceased in the Waters street (homestead) property, and $250 from proceeds of the Franklin street property; $248.66 is apportioned as the active part of her one-third life interest in her husband's real estate, also $750 in settlement of her claim against his estate.

To appellants is awarded, share and share alike, $1,250, proceeds of their undivided interest of five-twelfths in the Waters street property, $497.32, proceeds of the Franklin street property remaining after deducting allowances appropriated to appellee, and the judgment for $150 in favor of appellants against appellee, for rents, is affirmed.

Under orders of court, the homestead fund may be reinvested in another homestead with remainder to appellants on termination of the homestead right by death or otherwise; or the homestead and life interest allowances may be loaned, on proper security, interest payable to appellee as long as the homestead right subsists or the life estate is in existence, with remainder to appellants; or these funds may be paid to appellee, on the execution by her of a refunding bond, properly secured, conditioned to pay appellants the principal of either or both estates upon the termination of either or both, as the case may be.

In order to consummate sale of the Waters street property under order of court heretofore made, and for purposes of settlement and investment of funds, the case is remanded to the trial court for further proceedings.

### On Motions for Rehearing.

On motion for rehearing, appellants contend that we erred in approving the allowance to Mrs. Devenport of $750, being her half interest in the community fund used in improving the Waters street or homestead property; their contention being that as P. F. Devenport only owned a seven-twelfths interest in this property, his estate would not be responsible, to the community, in excess of the value of the improvements to his interest, and, as $1,500 was the value of the improvements to the entire property, seven-twelfths of the sum, or $875, would represent the improvement value to the interest of deceased, one-half of which, $437.50, would be the community interest of appellee, which amount should have been allowed instead of the sum of $750. The claim in favor of appellee for $750 was allowed as a debt against the estate of her husband and, in our opinion, it is none the less a debt in its entirety because the money was used to improve the homestead in which he only owned seven-twelfths of the fee. Our reasons for holdings on other questions are, in our opinion, sufficiently stated in the original opinion.

In paragraph 7 of the original opinion, we said, "At the death of P. F. Devenport, a constituent of his family (appellee) remained, therefore his interest in the homestead descended and vested in appellants, free from debt, except for purchase money, taxes, or improvements contracted in writing in the manner prescribed by the Constitution, and as it is not contended that the claim for $750 belongs to either of these categories, it was

neither a charge upon the land nor its proceeds." Appellee challenges the correctness of this conclusion, and insists that the record does disclose the existence of a legal contract that fixed a lien, for paving improvements, upon the undivided interest of P. F. Devenport in the homestead property, hence we are asked to correct the conclusion accordingly. In view of the criticism, we have very carefully re-examined the statement of facts, and the only evidence in regard to a written contract for paving is the testimony of Mrs. Devenport, who said, "We (meaning herself and husband) signed a paving contract and the Bitulithic Paving Company did the paving in front of the lot, etc." This evidence, in our opinion, falls far short of showing the execution of a contract, such as the Constitution (section 50, art. 16) requires, in order to fix a lien on homestead property, hence we find no reason to correct the conclusion as stated.

Motions of the parties for rehearing are both overruled.

Overruled.